**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| A.L., a Minor, By and Through her Natural Father and Authorized Representative T.L.,<br><br>Plaintiff,<br><br>vs.<br><br>Sage Dining Services Inc.; Fabian Dominguez; Hoosac School; and Dean Foster,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Case No. <u>1:22-cv-00976 (MAD/TWD)</u>

## COMPLAINT FOR DAMAGES

**COMES NOW**, Plaintiff A.L., a minor female, by and through her Natural Father and Authorized Representative T.L., and states and alleges as follows for her Complaint for Damages against the above-named Defendants:

### PARTIES

1.      Plaintiff A.L., at all times relevant to the allegations contained herein, is and was a minor female residing in Overland Park, Kansas.

2.      A.L. at all times relevant to the allegations contained herein, was a full-time boarding student at Defendant Hoosac School in Hoosick, New York.

3.      Defendant Sage Dining Services Inc. is and was at all times relevant to the allegations contained herein, a Maryland corporation that provides catering, meals, and cafeteria services to various entities and schools, throughout the United States, including Hoosac School.

4.      Defendant Fabian Dominguez, was at all time relevant to the allegations contained herein, a male resident of the State of New York, over eighteen (18) years of age, and an employee of Defendant Sage Dining Services, Inc..

1

5.      Defendant Hoosac School is a private co-educational boarding school located in Hoosick, New York for students in grades eight through twelve.

6.      Defendant Dean Foster, is and was at all times relevant to the allegations contained herein, a male resident of the State of New York, and the Head Master of Defendant Hoosac School.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 as the matter involves questions under federal law, including the claims of gender discrimination/harassment, and retaliation, in violation of Title VII, 42 U.S.C. §2000 *et seq.*

8.      Upon information and belief, at all times relevant to the allegations contained herein, Defendant Sage Dining Services ("Sage") was an employer as defined in 42 U.S.C. §12111.

9.      Upon information and belief, at all-times relevant to the allegations contained herein, Defendant Hoosac School ("Hoosac") was an employer as defined in 42 U.S.C. §12111.

10.     This Court has supplement jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. §1367.

11.     Jurisdiction is proper over Defendant Sage in that it transacts business in the State of New York, and the alleged tortious acts, omissions and occurrences giving rise to the claims alleged herein, were committed by Defendant Sage in the State of New York.

12.     Jurisdiction is proper over Defendant Fabian Dominguez ("Dominguez") in that he is a resident of the State of New York, and the alleged tortious acts, omissions and occurrences giving rise to the claims alleged herein were committed by Defendant Dominguez in the State of New York.

2

13.     Jurisdiction is proper over Defendant Hoosac in that it operates a co-educational boarding school in the State of New York, and the alleged tortious acts, omission, and occurrences giving rise to the claims alleged herein were committed by Defendant Hoosac in the State of New York.

14.     Jurisdiction is proper over Defendant Dean Foster in that he is a resident of the State of New York, and acting headmaster of Hoosac, and the alleged tortious actions, omissions and occurrences giving rise to the claims alleged herein were committed by Defendant Foster in the State of New York.

15.     Venue is proper in this Court as the alleged tortious acts, omissions and occurrences giving rise to the claims alleged herein occurred in Rensselaer County, New York, which is encompassed within the jurisdiction of this Court.

## CONDITION PRECEDENT

16.     Plaintiff A.L., by and through her Natural Father and Next Friend T.L., timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about September 27, 2021, against Sage Dining Services, to which Charge No. 525-2022-00026 was assigned. *A true and accurate copy of the charge is attached hereto as Exhibit A and incorporated herein by reference.*

17.     Plaintiff A.L., by and through her Natural Father and Next Friend T.L., timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about October 8, 2021, against Hoosac School, to which Charge No. 525-2002-00064 was assigned. *A true and accurate copy of the charge is attached hereto as Exhibit B and incorporated herein by reference.*

18.     On or about March 29, 2022, the EEOC issued its determination as it relates to the allegations encompassed within the charges of discrimination filed by A.L. against both Sage and Hoosac.

19.     The EEOC, in its determination relating to the allegations against Sage, found that Sage is an employer within the meaning of Title VII, and that all requirements for coverage were met.

20.     The EEOC, in its determination relating to the allegations against Hoosac, found that Hoosac is an employer within the meaning of Title VII, and that all requirements for coverage were met.

21.     The EEOC further found in its determinations that A.L.'s allegations of sexual assault were credible, and that both Sage and Hoosac violated Title VII of the Civil Rights Act. *True and accurate copies of the Determinations are attached hereto as Exhibits C and D and incorporated herein by reference.*

22.     Thereafter, and on or about June 21, 2022, the EEOC issued the Notice of Right to Sue with respect to both Sage and Hoosac. *True and accurate copies of the Notices are attached hereto as Exhibits E and F and incorporated herein by reference.*

23.     This action is timely filed with the Court and Plaintiff has met all conditions precedent to the filing of this action.

## FACTUAL ALLEGATIONS

24.     Plaintiff A.L. was a full-time boarding student at Hoosac and a sophomore in the Fall of 2020.

25.     In October of 2020, A.L. started volunteering in the school kitchen and cafeteria at Hoosac.

4

26.     In February of 2021, A.L. began working as a part time employee of Sage and Hoosac, performing duties in the kitchen and cafeteria, including food preparation and service.

27.     Based on information and belief, Hoosac negotiated the contract for Sage's services, provided Sage access to school facilities, provided Sage access to students, and permitted Hoosac students to work and/or volunteer with Sage.

28.     Sage and Hoosac were joint employers of A.L. from February of 2021 until late April of 2021 when A.L. was terminated from her position at the Hoosac dining hall.

29.     At the time A.L. was hired as a part time employee to work in the dining facility of Hoosac, and thereafter, she was not provided any training on policies regarding discrimination, sexual harassment and/or retaliation.

30.     A.L. worked in the dining facility from the time of her hire until Spring Break, and thereafter returned to work after Spring Break which was in March of 2021.

31.     Following A.L.'s return from Spring Break, Dominguez, who was employed by Sage and a supervisor with Sage, asked A.L. to come to the dining facility to look over her employment paperwork.

32.     Plaintiff did as Dominguez requested, and reported to the dining facility to meet with him.

33.     Dominguez had A.L. stay with him while he cooked a meal for the cafeteria under the guise that he needed her assistance, and she could leave when the other employee reported to work.

34.     While A.L. was in the kitchen with Dominguez, he offered her alcohol which she declined.

35.     Based on information and belief, there was alcohol in the dining facility/kitchen of Hoosac, that was available and consumed by faculty and others, and accessible to minors.

36.     Thereafter, A.L. went to the dry storage area to get water and Dominguez followed her into the storage area, closed the door, and pushed A.L. against one of the shelves.

37.     Dominguez kissed and touched A.L.'s breasts, lifted her shirt and began touching and sucking on A.L.'s bare breasts.

38.     Dominguez also touched A.L.'s vaginal area through her clothing.

39.     Dominguez then pushed A.L. down towards the ground until she was on her knees in front of him, exposed his penis and maneuvered A.L.'s head forcing her to perform oral sex on him.

40.     While Dominguez was forcing A.L. to perform oral sex, he took one of her hands and placed it in his genital area, and then forced her to swallow his semen.

41.     Immediately following the sexual assault, A.L. left the storage area and returned to the kitchen area where Dominguez repeatedly commented to her that she was a "good girl".

42.     When the other employee arrived at the dining facility, Dominguez stopped making comments to A.L.

43.     At the request of the employee who had recently arrived, A.L. stayed and assisted with food preparation and service.

44.     A.L. was not alone again with Dominguez until on or about April 6, 2021.

45.     On or about April 6, 2021, A.L. arrived to her shift at the dining hall in the late afternoon and worked on making fruit cups and a salad which would be served to students that evening.

6

46.     While A.L. was cutting watermelon, Dominguez approached her and asked her for a piece of it, which she gave to him.

47.     Dominguez then asked A.L. if she wanted to share some watermelon.

48.     A.L. was confused by Dominguez's comment and offered him another piece of watermelon, while taking one for herself.

49.     Dominguez then told A.L. to follow him as he had something to show her.

50.     Dominguez led A.L. into the dry storage area, pushed her against one of the shelves, began kissing her, and touching her breasts and vaginal area.

51.     After assaulting A.L., Dominguez told her that if she ever wanted to share watermelon again, they could. A.L. responded "no thanks" to Dominguez and returned to her job duties.

52.     A.L. finished cutting the watermelon and was working on the salads when Dominguez approached her and asked if she wanted to return to the dry storage area, to which A.L. responded "no" and continued working.

53.     Dominguez left A.L. alone for a short period of time, only to return to ask her if she was sure that she did not want to return to the storage area with him.

54.     A.L. responded to Dominguez that she was sure she did not want to return to the storage area with him and that she needed to finish making the salads.

55.     Thereafter Dominguez left for the remainder of the day/evening.

56.     On or about April 13, 2021, A.L. was once again assigned to be working alone with Dominguez.

57.     During her work shift, A.L. had completed her tasks and she was eating an apple.

58.     Dominguez told A.L. she could take a break and eat the apple in his office.

59.    A.L. went into the office for her break and sat in a rolling chair eating her apple.

60.    Dominguez came into the office, shut the door, pulled the chair close to him, and began kissing A.L.

61.    Dominguez then began touching A.L.'s breasts and digitally penetrating her vagina.

62.    Dominguez abruptly stopped and told A.L. in a stern voice to "stay put".

63.    Dominguez briefly went out to the kitchen, checked on the food, and then returned to the office where he continued to sexually assault A.L.

64.    Another employee was in close proximity to the office, and based on information and belief, upon hearing an employee in close proximity, Dominguez abruptly stopped touching and kissing A.L. and left the office.

65.    The sexual harassment, sexual assaults, and inappropriate sexual contact of A.L. by Dominguez was reported to headmaster Dean Foster by another Hoosac student, and was thereafter confirmed by A.L.

66.    Dean Foster contacted Dominguez about the allegations, and thereafter allowed Dominguez to be alone with A.L.

67.    Dominguez subsequently informed A.L. that she was terminated and no longer allowed to work in the dining facility or kitchen.

68.    Dominguez terminated A.L. based on Foster's instructions to terminate A.L.

69.    Based on information and belief, Defendant Hoosac and Defendant Foster failed to conduct a meaningful investigation into A.L.'s allegations of sexual harassment, sexual assault, and inappropriate sexual contact, despite the fact that A.L. was a minor in Defendants' custody and care, and unable to consent to the sexual interactions.

70.     Based on information and belief, Defendant Foster and other employees of Defendant Hoosac conducted interviews of students and other individuals following A.L.'s report of sexual harassment, sexual assault, and inappropriate sexual contact, meant to "dig up dirt" on A.L.'s behaviors and discredit her allegations.

71.     Thereafter Defendant Foster and other employees of Defendant Hoosac made disparaging remarks about A.L. to students, faculty, and others.

72.     Moreover, Defendants Hoosac and Foster made it difficult for Plaintiff A.L. to return to Hoosac following a trip home after the reporting of the sexual harassment and sexual assaults.

73.      The conduct of Defendants Hoosac and Defendant Foster relating to A.L.'s return to school included but was not limited to: requesting a medical release in order for A.L. to return to school, and demanding that a release agreement be signed by A.L.'s parents, waiving any potential claims against Hoosac and its employees/agents and others arising from the sexual harassment, sexual assaults, and inappropriate sexual contact to which A.L. was subjected.

74.     A release agreement was never signed but A.L. was eventually allowed to return to school at Hoosac.

75.     Based on information and belief, Defendant Sage failed to conduct its own independent investigation into the allegations made by A.L. against Dominguez.

76.     Based on information and belief, Defendant Sage had previously disciplined Dominguez for inappropriate touching in the workplace, and failed to take action to prevent sexual harassment, sexual assault, and inappropriate sexual contact by Dominguez.

77.     Based on information and belief, Defendants Hoosac and Foster failed to report the abuse of A.L. as required by law.

78.     A.L. was discriminated against by Defendants Hoosac and Sage in the terms, conditions and privileges of her employment.

79.     A.L. was retaliated against by Defendants Hoosac and Sage following her reporting of sexual harassment, sexual abuse and inappropriate sexual contact, in the terms, conditions, and privileges of her employment, including be terminated.

80.     As a result of the Defendants' acts, omissions, and occurrences, Plaintiff has suffered and will continue to suffer emotional distress.

81.     As a result of Defendants Hoosac and Sage's acts, omissions, and occurrences, Plaintiff has suffered and will continue to suffer lost wages.

82.     At all times relevant to the allegations contained herein, Dominguez and others were employees, agents and/or servants of Defendant Sage and were at all such times acting within the course and scope of their employment and/or their actions were expressly authorized or ratified by Defendant Sage, making it liable under the doctrine of respondeat superior.

83.     At all times relevant to the allegations contained here, Foster and others were employees, agents and/or servants of Defendant Hoosac and were at all such time acting within the course and scope of their employment and/or their actions were expressly authorized or ratified by Defendant Hoosac, making it liable under the doctrine of respondeat superior.

## COUNT I
### Against Defendant Sage And Defendant Hoosac
**(Sexual Discrimination/Harassment, Hostile Work Environment, 42 U.S.C. §2000 *et seq*.)**

84.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

85.     During the course and scope of Plaintiff's employment with Defendant Sage and Defendant Hoosac, Defendants' representative, and more specifically Fabian Dominguez, while

acting in the course and scope of employment, engaged in a pattern and practice of discrimination against Plaintiff based on her sex/gender in violation of Title VII, as alleged herein.

86.     During her employment with Defendant Sage and defendant Hoosac, Plaintiff was subjected to harassment and/or a hostile work environment based on her sex, which included but was not limited to, inappropriate comments of a sexual nature, inappropriate touching of a sexual nature by Dominguez, and sexual assaults at the hands of Dominguez.

87.     Plaintiff's female sex was a motivating factor in the harassing and abusive conduct she suffered.

88.     The unwelcome sexual harassment, sexual contact and sexual assaults to which Plaintiff was subjected were sufficiently severe and/or pervasive as to alter the conditions of her employment and create an abusive, hostile, intimidating, and offensive working environment because of her sex/gender.

89.     The harassment was subjectively intimidating and/or offensive to Plaintiff and would have been so intimidating and/or offensive to a reasonable person.

90.     This unwelcome sexual harassment adversely affected Plaintiff's terms, conditions, and privileges of her employment.

91.     Defendant Sage and Defendant Hoosac had actual and/or constructive notice of said unlawful conduct and failed to take prompt remedial action.

92.     The comments and conduct adversely impacted the terms, conditions, and privileges of Plaintiff's employment because Plaintiff was denied her right to work in an employment environment free from discriminatory treatment, and because the conduct described herein unnecessarily interfered with Plaintiff's ability to perform her job, and constitute unlawful employment practices in violation of Title VII.

93.     By subjecting plaintiff to a hostile work environment and discrimination, all on the basis of her sex/gender, Defendant Sage and Defendant Hoosac violated 42 U.S.C. § 2000e *et seq*.

94.     As a direct and proximate cause of Defendant Sage's and Defendant Hoosac's alleged discriminatory conduct, acts and omissions, Plaintiff has incurred and will continue to incur lost wages and loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation and degradation.

95.     The actions set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff, and therefore Plaintiff is entitled to punitive damages from Defendant Sage and Defendant Hoosac, to punish and deter Defendant Sage and Defendant Hoosac and others from like conduct.

WHEREFORE, Plaintiff prays for judgment against Defendant Sage and Defendant Hoosac on Count I of her Complaint, for a finding that she has been subjected to unlawful discrimination as prohibited by 42 U.S.C. § 2000e *et seq*.; an award of compensatory damages, including lost wages and loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation and degradation; punitive damages; costs expended; reasonable attorneys' fees and expert fees provided by 42 U.S.C. § 2000e *et seq*.; equitable relief in the form of reinstatement or an award of front pay; and for such other and further relief as this Court deems just and proper.

## COUNT II
### Against Defendant Sage
**(Retaliation 42 U.S.C. § 2000e *et seq*.)**

96.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

97.     Defendant Hoosac and Defendant Foster were made aware of Defendant Dominguez's sexual harassment, sexual assaults, and inappropriate sexual harassment of A.L. by a Hoosac student and, thereafter, by A.L.

98.     Based on information and belief, Defendant Hoosac and Defendant Foster informed Dominguez of the allegations against him as it relates to the sexual harassment, sexual assaults and inappropriate sexual contact involving A.L. as reported by a Hoosac student and A.L.

99.     By reason of Plaintiff's reporting of the sexual harassment, sexual assaults and inappropriate sexual contact, Defendant Sage retaliated against Plaintiff in ways including but not limited to terminating her employment and refusing to allow her to continue working in the dining hall or kitchen at Hoosac.

100.    Defendant Sage's retaliation against Plaintiff was intentional, willful, and malicious, and constituted a willful violation of Plaintiff's federally protected rights.

101.    At the time Defendant Sage retaliated against Plaintiff, Defendant Sage knew that such retaliation was unlawful.

102.    As a result of Defendant Sage's retaliation, Plaintiff has incurred and will continue to incur lost wages and loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation and degradation.

103.    The actions set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and, therefore, Plaintiff is entitled to punitive damages from Defendant Sage to punish and deter Defendant Sage and others from like conduct.

WHEREFORE, Plaintiff prays for judgment against Defendant Sage on Count II of her Complaint, for a finding that she has been subjected to unlawful retaliation prohibited by 42 U.S.C.

§2000e *et seq*.; an award of compensatory damages, including lost wages and loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation and degradation; punitive damages; costs expended; reasonable attorneys' fees and expert fees provided by 42 U.S.C. § 2000e *et seq*.; equitable relief in the form of reinstatement or an award of front pay; and for such other and further relief as this Court deems just and proper.

## COUNT III
### Against Defendant Hoosac
**(Retaliation 42 U.S.C. § 2000e *et seq*.)**

104.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

105.    Defendants Hoosac and Foster were made aware of Defendant Dominguez's sexual harassment, sexual assaults, and inappropriate sexual harassment of A.L. by a Hoosac student and, thereafter, by A.L.

106.    Based on information and belief, Defendants Hoosac and Foster informed Dominguez of the allegations against him as it relates to the sexual harassment, sexual assaults and inappropriate sexual contact involving A.L. as reported by a Hoosac student and A.L.

107.    Based on information and belief, Defendant Foster instructed Dominguez to terminate A.L.'s employment and instructed Dominguez to no longer allow A.L. to perform duties and responsibilities in the dining hall or kitchen of Hoosac.

108.    Moreover, Defendant Foster allowed Dominguez to meet with A.L. alone to terminate her employment, despite knowing of the allegations of sexual harassment, sexual assault, and inappropriate sexual contact by Dominguez.

109.    Thereafter, Defendant Foster interviewed students and others in an attempt to "dig up dirt" on A.L. and discredit her allegations.

110.    Defendant Foster also made disparaging remarks about A.L. to students, faculty and others following her complaints.

111.    By reason of Plaintiff's reporting of the sexual harassment, sexual assaults and inappropriate sexual contact, Defendant Hoosac retaliated against Plaintiff in ways including but not limited to terminating her employment, refusing to allow her to continue performing duties and responsibilities in the dining hall or kitchen at Hoosac, and permitting Dominguez to meet with A.L. alone.

112.    Defendant Hoosac's retaliation against Plaintiff was intentional, willful, and malicious, and constituted a willful violation of Plaintiff's federally protected rights.

113.    At the time Defendant Hoosac retaliated against Plaintiff, Defendant Hoosac knew that such retaliation was unlawful.

114.    As a result of Defendant Hoosac's retaliation, Plaintiff has incurred and will continue to incur lost wages and loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation and degradation.

115.    The actions set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant Hoosac, to punish and deter Defendant Hoosac and others from like conduct.

WHEREFORE, Plaintiff prays for judgment against Defendant Hoosac on Count III of her Complaint, for a finding that she has been subjected to unlawful retaliation prohibited by 42 U.S.C. §2000e *et seq*.; an award of compensatory damages, including lost wages and loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation and degradation; punitive damages; costs expended; reasonable attorneys' fees and expert fees

provided by 42 U.S.C. § 2000e *et seq.*; equitable relief in the form of reinstatement or an award of front pay; and for such other and further relief as this Court deems just and proper.

## COUNT IV
### Against Defendant Sage, Defendant Hoosac, And Defendant Dominguez
**Sexual Harassment/Discrimination in Employment in Violation of the New York State Human Rights Law (NY Exec Law §296 [1])**

116.   Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

117.   The acts and omissions of Defendant Sage and Defendant Hoosac alleged herein are a violation of the New York State Human Rights Law.

118.   During the course and scope of Plaintiff's employment with Defendant Sage and Defendant Hoosac, Defendants' representative, and more specifically Defendant Fabian Dominguez, while acting in the course and scope of employment, engaged in a pattern and practice of discrimination against Plaintiff based on her sex/gender in violation of the NYSHRL as alleged herein.

119.   During her employment with Defendant Sage and Defendant Hoosac, Plaintiff was subjected to harassment and/or hostile work environment based on her sex, which included but was not limited to, inappropriate comments of a sexual nature, inappropriate touching of a sexual nature by Defendant Dominguez, and sexual assaults at the hands of Defendant Dominguez.

120.   Plaintiff was targeted, harassed and abused due to her sex/gender of female.

121.   The unwelcome sexual harassment, sexual contact and sexual assaults, to which Plaintiff was subjected, altered the conditions of her employment and created an abusive, hostile, intimidating and offensive working environment because of her sex/gender.

122.   The harassment was subjectively intimidating and/or offensive to Plaintiff and would have been intimidating and/or offensive to a reasonable person.

16

123.     This unwelcome sexual harassment adversely affected Plaintiff's terms, conditions, and privileges of her employment.

124.     Defendant Sage and Defendant Hoosac had actual and/or constructive notice of said unlawful conduct and failed to take prompt remedial action.

125.     The comments and conduct adversely impacted the terms, conditions, and privileges of Plaintiff's employment because Plaintiff was denied her right to work in an employment environment free from discriminatory treatment, and the conduct described herein unnecessarily interfered with Plaintiff's ability to perform her job, and constitutes unlawful employment practices in violation of the NYSHRL.

126.     By subjecting plaintiff to a hostile work environment and discrimination, all on the basis of her sex/gender, Defendant Sage and Defendant Hoosac violated the NYSHRL (NY Exec Law §296[1])

127.     As a direct and proximate cause of Defendant Sage's and Defendant Hoosac's alleged discriminatory conduct, acts and omissions, Plaintiff has incurred and will continue to incur lost wages and loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation and degradation.

128.     The actions set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff, and therefore Plaintiff is entitled to punitive damages from Defendant Sage and Defendant Hoosac to punish and deter Defendant Sage, Defendant Hoosac and others from like conduct.

WHEREFORE, Plaintiff prays for judgment against Defendant Sage and Defendant Hoosac on Count IV of her Complaint for a finding that she has been subjected to unlawful discrimination as prohibited by the New York State Human Rights Law (NY Exec Law §296 [1]);

for an award of compensatory damages, including lost wages and loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation and degradation; punitive damages; costs expended; reasonable attorneys' fees and expert fees provided by law; equitable relief in the form of reinstatement or an award of front pay; and for such other and further relief as this Court deems just and proper.

**COUNT V**
**Against Defendant Sage**
**(Retaliation in Violation of the New York State Human Rights Law**
**(NY Exec Law §296 [1]))**

129.   Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

130.   Defendants Hoosac and Foster were made aware of Defendant Dominguez's sexual harassment, sexual assaults, and inappropriate sexual contact of A.L. by a Hoosac student and, thereafter, by A.L.

131.   Based on information and belief, Defendants Hoosac and Foster informed Dominguez of the allegations against him as it relates to the sexual harassment, sexual assaults and inappropriate sexual contact involving A.L. as reported by a Hoosac student and A.L.

132.   By reason of Plaintiff's reporting of the sexual harassment, sexual assaults and inappropriate sexual contact, Defendant Sage retaliated against Plaintiff in ways including but not limited to terminating her employment and refusing to allow her to continue working in the dining hall or kitchen at Hoosac.

133.   Defendant Sage's retaliation against Plaintiff was intentional, willful, and malicious, and constituted a willful violation of Plaintiff's rights under the New York State Human Rights Law.

18

134. At the time Defendant Sage retaliated against Plaintiff, Defendant Sage knew that such retaliation was unlawful.

135. As a result of Defendant Sage's retaliation, Plaintiff has incurred and will continue to incur lost wages and loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation and degradation.

136. The actions set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant Sage, to punish and deter Defendant Sage and others from like conduct.

WHEREFORE, Plaintiff prays for judgment against Defendant Sage on Count V of her Complaint for a finding that she has been subjected to unlawful retaliation prohibited by the New York State Human Rights Law (NY Exec Law §296 [1]); for an award of compensatory damages, including lost wages and loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation and degradation; punitive damages; costs expended; reasonable attorneys' fees and expert fees provided by law; equitable relief in the form of reinstatement or an award of front pay; and for such other and further relief as this Court deems just and proper.

**COUNT VI**
**Against Defendant Hoosac**
**(Retaliation in Violation of the New York State Human Rights Law**
**(NY Exec Law §296 [1]))**

137. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

138.   Defendant Hoosac and Defendant Foster were made aware of Defendant Dominguez's sexual harassment, sexual assaults, and inappropriate sexual harassment of A.L. by a Hoosac student and, thereafter, by A.L.

139.   Based on information and belief, Defendant Hoosac and Defendant Foster informed Dominguez of the allegations against him as it relates to the sexual harassment, sexual assaults and inappropriate sexual contact involving A.L. as reported by a Hoosac student and A.L.

140.   Based on information and belief, Defendant Foster instructed Dominguez to terminate A.L.'s employment and instructed Dominguez to no longer allow A.L. to perform duties and responsibilities in the dining hall or kitchen of Hoosac.

141.   Moreover, Defendant Foster allowed Dominguez to meet with A.L. alone to terminate her employment, despite knowing of the allegations of sexual harassment, sexual assault, and inappropriate sexual contact by Dominguez.

142.   Thereafter, Defendant Foster, as an employee of Defendant Hoosac, interviewed students and others in an attempt to "dig up dirt" on A.L. and discredit her allegations.

143.   Defendant Foster, as an employee of Defendant Hoosac, also made disparaging remarks about A.L. to students, faculty and others following her complaints.

144.   Defendant Hoosac retaliated against A.L. in that it insisted on a medical release, and a release of any potential claims against Hoosac and its agents and employees before allowing A.L. to return to Hoosac.

145.   A.L. did not sign any release and was eventually allowed to return to Hoosac.

146.   By reason of Plaintiff's reporting of the sexual harassment, sexual assaults and inappropriate sexual contact, Defendant Hoosac retaliated against Plaintiff in ways including but not limited to terminating her employment, refusing to allow her to continue performing duties

and responsibilities in the dining hall or kitchen at Hoosac, and permitting Dominguez to meet with A.L. alone.

147.    Defendant Hoosac's retaliation against Plaintiff was intentional, willful, and malicious, and constituted a willful violation of Plaintiff's rights under the New York State Human Rights Law.

148.    At the time Defendant Hoosac retaliated against Plaintiff, Defendant Hoosac knew that such retaliation was unlawful.

149.    As a result of Defendant Hoosac's retaliation, Plaintiff has incurred and will continue to incur lost wages and loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation and degradation.

150.    The actions set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant Hoosac to punish and deter Defendant Hoosac and others from like conduct.

WHEREFORE, Plaintiff prays for judgment against Defendant Hoosac on Count VI of her Complaint for a finding that she has been subjected to unlawful retaliation prohibited by the New York State Human Rights Law (NY Exec Law §296 [1])  for an award of compensatory damages, including lost wages and loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation and degradation; punitive damages; costs expended; reasonable attorneys' fees and expert fees provided by law; equitable relief in the form of reinstatement or an award of front pay; and for such other and further relief as this Court deems just and proper.

## COUNT VII
### Against Defendant Foster
**(Aiding and Abetting Retaliation in Violation of the New York State Human Rights Law (NY Exec Law §296 [1]))**

151.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

152.    Defendant Foster was made aware of Defendant Dominguez's sexual harassment, sexual assaults, and inappropriate sexual harassment of A.L. by a Hoosac student and, thereafter, by A.L.

153.    Based on information and belief, Defendant Foster informed Dominguez of the allegations against him as it relates to the sexual harassment, sexual assaults, and inappropriate sexual contact involving A.L. as reported by a Hoosac student and A.L.

154.    Based on information and belief, Defendant Foster aided and abetted in the retaliation against A.L. when he instructed Dominguez to terminate A.L.'s employment and instructed Dominguez to no longer allow A.L. to perform duties and responsibilities in the dining hall or kitchen of Hoosac.

155.    Moreover, Defendant Foster aided and abetted in the retaliation against A.L. by allowing Dominguez to meet with A.L. alone to terminate her employment, despite knowing of the allegations of sexual harassment, sexual assault, and inappropriate sexual contact by Dominguez and that A.L. would be intimidated by such a meeting.

156.    Thereafter, Defendant Foster aided and abetted in the retaliation against A.L. by interviewing students and others in an attempt to "dig up dirt" on A.L. and discredit her allegations.

157.    Defendant Foster aided and abetted in the retaliation against A.L. by insisting on a medical release, and a release of any potential claims against Hoosac and its agents and employees, before allowing A.L. to return to Hoosac.

158.    Despite there being no release of claims, A.L. was eventually allowed to return to Hoosac.

159.    By reason of Plaintiff's reporting of the sexual harassment, sexual assaults, and inappropriate sexual contact, Defendant Foster aided and abetted in the retaliation against Plaintiff in ways including, but not limited to, informing Dominguez to terminate A.L's employment, refusing to allow A.L. to continue performing duties and responsibilities in the dining hall or kitchen at Hoosac, permitting Dominguez to meet with A.L. alone, and in interviewing students and others in an attempt to "dig up dirt" and discredit A.L.

160.    Defendant Foster's actions to aid and abet in the retaliation against Plaintiff A.L. were intentional, willful, and malicious, and constituted a willful violation of Plaintiff's rights under the New York State Human Rights Law.

161.    At the time Defendant Foster aided and abetted in the retaliation against Plaintiff, Defendant Foster knew that such retaliation was unlawful.

162.    As a result of Defendant Foster's aiding and abetting in the retaliation against Plaintiff, Plaintiff has incurred and will continue to incur lost wages and loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation and degradation.

163.    The actions set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and, therefore, Plaintiff is entitled to punitive damages from Defendant Foster to punish and deter Defendant Foster and others from like conduct.

WHEREFORE, Plaintiff prays for judgment against Defendant Foster on Count VII of her Complaint for a finding that she has been subjected to unlawful retaliation prohibited by the New York State Human Rights Law (NY Exec Law §296 [1]);  for an award of compensatory damages,

including lost wages and loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation and degradation; punitive damages; costs expended; reasonable attorneys' fees and expert fees provided by law; equitable relief in the form of reinstatement or an award of front pay; and for such other and further relief as this Court deems just and proper.

## COUNT VIII
### Against Defendant Sage
### (Negligent Retention/Supervision)

164.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

165.     Defendant Sage owed a duty of reasonable care to Plaintiff A.L. in the retention and/or supervision of Fabian Dominguez as an employee/supervisor.

166.     Defendant Sage was negligent in the supervision and/or retention of Dominguez.

167.     Based on information and belief, there had been one or more complaints about Dominguez made to Defendant Sage regarding Dominguez's inappropriate interactions with female employees of Defendant Sage prior to his acts of sexual harassment, sexual assault, and inappropriate sexual contact of Plaintiff.

168.     Based on information and belief, Defendant Sage was aware of the complaints regarding Dominguez's inappropriate conduct prior to his sexual harassment, sexual assault, and inappropriate sexual contact of Plaintiff.

169.     Despite this alleged knowledge of Dominguez's discriminatory, harassing, and inappropriate actions and propensities, Defendant Sage continued to employ Dominguez and failed to reasonably supervise Dominguez.

170.     Defendant Sage's lack of supervision and/or retention of Dominguez allowed him to commit acts of sexual harassment, sexual assault, and inappropriate sexual contact against Plaintiff.

171.     Defendant Sage's failure to reasonably supervise and/or retain Dominguez directly caused or contributed to cause injuries to Plaintiff.

172.     Defendant Sage failed to use the care and skill exercised by a reasonable employer under the same or similar circumstances in its supervision and/or retention of Dominguez, and had Dominguez been better supervised, such supervision would have prevented Plaintiff from experiencing sexual harassment, sexual assault, and inappropriate sexual contact by Dominguez while Plaintiff was employed with Defendant Sage.

173.     At all times mentioned herein, the above-referenced perpetrator and/or other employees, were employees, agents and servants of Defendant Sage and were at all such times acting within the course and scope of their employment with Defendant Sage and/or their actions were expressly authorized by Defendant Sage, thereby making Defendant Sage liable under the doctrine of respondeat superior.

174.     As a result of Defendant Sage's negligent acts and omissions, Plaintiff has incurred and will continue to incur lost wages and loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation, and degradation.

175.     The actions set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and, therefore, Plaintiff is entitled to punitive damages from Defendant Sage to punish and deter Defendant Sage and others from like conduct.

WHEREFORE, Plaintiff prays for judgment against Defendant Sage on Count VIII of her Complaint for an award of compensatory damages, including lost wages and loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation and degradation; punitive damages; pre-judgment and post judgment interest as provided by law; costs expended; and for such other relief as this Court deems just and proper, including equitable relief.

**COUNT IX**
**Against Defendant Sage**
**(Negligent Infliction of Emotional Distress)**

176.   Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

177.   Defendant Sage breached the duty owed A.L, as alleged in Counts I, II, IV, V, and VIII.

178.   Defendant Sage placed A.L. in a work environment where she was subjected to defendant Dominguez's authority, supervision, and control.

179.   Defendant Sage failed to adequately supervise Defendant Dominguez, as alleged above in Count VIII.

180.   Defendant Sage was negligent in that its policies allowed a minor female employee to work alone with a male supervisor.

181.   Defendant Sage was negligent in failing to provide sexual harassment training, including a mechanism whereby A.L. and others could report any sexual harassment, sexual abuse, and/or inappropriate sexual contact.

182.   Defendant Sage should have realized that placing A.L. in Defendant Dominguez's control and failing to thereafter supervise or control the conduct of Dominguez involved an

unreasonable risk of causing emotional distress when it knew that Dominguez had a propensity for sexual misconduct.

183.    Defendant Sage should have realized allowing a minor female to work alone with a male supervisor, and moreover, one who it knew to have a propensity for sexual misconduct, involved an unreasonable risk of causing emotional distress to A.L.

184.    Defendant Sage should have realized that failing to provide sexual harassment training, and failing to provide a reporting mechanism for any incidents of sexual harassment, sexual assault, and/or inappropriate sexual contact involved an unreasonable risk of causing emotional distress to A.L.

185.    As a direct and proximate result of Defendant Sage's negligence and carelessness, A.L. suffered medically diagnosable and medically significant emotional distress.

186.    A.L. has incurred damages as the result of Defendant Sage's negligence.

187.    The actions and conduct set forth herein were outrageous and showed evil motive, reckless indifference, and/or conscious disregard for the rights of A.L. and, therefore, she is entitled to punitive damages from Defendant Sage to punish Defendant Sage and to deter Defendant Sage and others from engaging in like conduct in the future.

188.    At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of the Defendant Sage and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by the Defendant Sage, and/or their actions were ratified by the Defendant Sage, thereby making the Defendant Sage vicariously liable for said actions under the doctrine of respondeat superior.

WHEREFORE, Plaintiff prays for judgment against Defendant Sage on Count IX of her Complaint for an award of compensatory damages, including lost wages and loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation and degradation; punitive damages; pre-judgment and post judgment interest as provided by law; costs expended; and for such other relief as this Court deems just and proper, including equitable relief.

## COUNT X
### Against Sage
**(Negligence)**

189.    Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

190.    Defendant Sage had a duty to possess and use that degree of reasonable skill and care to protect employees, employees who were minors, and students of Hoosac, including A.L., while in the presence of Sage employees, from unreasonable risks of harm.

191.    Defendant Sage breached its duty by committing acts and omissions of negligence and carelessness, and by failing to meet the requisite standards of due care, skill and practice as required by similar entities, including but not limited to:

a)    Placing A.L. in a work environment where she was subjected to Defendant Dominguez's authority, supervision, and control.

b)    Failing to adequately supervise Defendant Dominguez

c)    Allowing a minor female employee to work alone with a male supervisor.

d)    Failing to provide sexual harassment training, including a mechanism whereby A.L. and others could report any sexual harassment, sexual abuse, and/or inappropriate sexual contact.

192.     Moreover, Defendant Sage breached the duty owed A.L., as alleged in Counts I, II, IV, V, and VIII.

193.     Defendant Sage should have realized that placing A.L. in Defendant Dominguez's control and failing to thereafter supervise or control the conduct of Dominguez involved an unreasonable risk of potential harm to A.L., especially when it knew that Dominguez had a propensity for sexual misconduct.

194.     Defendant Sage should have realized that allowing a minor female to work alone with a male supervisor, and moreover, one who it knew to have a propensity for sexual misconduct, involved an unreasonable risk of potential harm to A.L. and others.

195.     Defendant Sage should have realized that failing to provide sexual harassment training, and failing to provide a reporting mechanism for any incidents of sexual harassment, sexual assault, and/or inappropriate sexual contact, involved an unreasonable risk of causing potential harm to A.L. and others.

196.     As a direct and proximate result of Defendant Sage's negligence, Defendant Dominguez was permitted to cause emotional and physical injury to A.L. as outlined above.

197.     Plaintiff A.L. has suffered and will continue to suffer damages as a result of Defendant Sage's negligence.

198.     Defendant Dominguez's conduct described herein was committed within the course and scope of his agency and employment with Defendant Sage and is imputed to it by respondeat superior, and Defendant Sage is therefore liable for all damages described herein.

199.     The actions and conduct set forth herein were outrageous and showed evil motive, reckless indifference, and/or conscious disregard for the rights of Plaintiff A.L., and therefore she

is entitled to punitive damages from Defendant Sage, to punish Defendant Sage and to deter Defendant Sage and others from engaging in like conduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendant Sage on Count X of her Complaint for an award of compensatory damages, including lost wages and loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation and degradation; punitive damages; pre-judgment and post judgment interest as provided by law; costs expended; and for such other relief as this Court deems just and proper, including equitable relief.

**COUNT XI**
**Against Hoosac and Defendant Foster**
**(Negligent Infliction of Emotional Distress)**

200.    Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

201.    Defendant Hoosac and Defendant Foster breached the duty they owed A.L, as alleged in Counts I, III, IV, VI, and VII.

202.    Defendant Hoosac and Defendant Foster placed and/or allowed A.L. to be placed in a work environment where she was subjected to Defendant Dominguez's authority, supervision, and control.

203.    Defendant Hoosac and Defendant Foster failed to adequately ensure that the employees of Sage, who were supervising and/or in contact with A.L., other student employees, and students in general, were supervised appropriately, had not been disciplined for sexual harassment or inappropriate conduct, and did not have propensities to engage in sexual harassment, sexual assault, and/or inappropriate contact with student employees, including A.L., or students in general.

30

204.   Defendant Hoosac and Defendant Foster were negligent in that they allowed a minor female employee to work alone with a male supervisor.

205.   Defendant Hoosac and Defendant Foster were negligent in failing to ensure that sexual harassment training was provided to A.L. and other student employees, including a mechanism whereby A.L. and others could report any sexual harassment, sexual abuse, and/or inappropriate sexual contact.

206.   Defendant Hoosac and Defendant Foster were negligent in failing to properly investigate the reports that A.L. had been sexually harassed, sexually assaulted, and inappropriately touched by Dominguez.

207.   Defendant Hoosac and Defendant Foster were negligent in informing Dominguez of the report that had been made against him, and, thereafter, allowing Dominguez to meet with A.L. alone.

208.   Defendant Hoosac and Defendant Foster were negligent in instructing Dominguez to terminate A.L.'s employment following the reporting of the sexual harassment, sexual assault, and inappropriate sexual contact that A.L. was subjected to by Dominguez.

209.   Defendant Hoosac and Defendant Foster were negligent in their interviewing of students and others, in that no effort was made to investigate and/or substantiate the allegations concerning the sexual harassment and sexual assault of A.L. but, rather, Defendants conducted the interviews in an effort to "dig up dirt" on and discredit A.L.

210.   Defendant Hoosac and Defendant Foster were negligent in failing to provide resources and emotional support to A.L. who was an employee and student of Hoosac.

211.   Defendant Hoosac and Defendant Foster should have realized that failing to adequately ensure that supervisor level employees of Sage were properly supervised, had not been

disciplined for sexual harassment or inappropriate conduct, and did not have propensities to engage in sexual harassment, sexual assault, and/or inappropriate contact with student employees, including A.L., and students in general, involved an unreasonable risk of causing emotional distress to A.L.

212.   Defendant Hoosac and Defendant Foster should have realized allowing A.L., a minor female, to work alone with a male supervisor, and moreover, one who had a propensity for sexual misconduct, involved an unreasonable risk of causing emotional distress to A.L.

213.   Defendant Hoosac and Defendant Foster should have realized that failing to ensure that sexual harassment training was provided to student employees, including to A.L., and failing to ensure that a reporting mechanism for any incidents of sexual harassment, sexual assault, and/or inappropriate sexual contact involved an unreasonable risk of causing emotional distress to A.L.

214.   Defendant Hoosac and Defendant Foster should have realized that failing to properly investigate the reports that A.L. has been sexually harassed, sexually assaulted, and inappropriately touched by Dominguez involved an unreasonable risk of causing emotional distress to A.L.

215.   Defendant Hoosac and Defendant Foster should have realized that informing Dominguez of the report that had been made against him, and thereafter allowing Dominguez to meet with A.L. alone, involved an unreasonable risk of causing emotional distress to A.L.

216.   Defendant Hoosac and Defendant Foster should have realized that instructing Dominguez to terminate A.L.'s employment following the reporting of the sexual harassment, sexual assault, and inappropriate sexual contact of A.L. by Dominguez, involved an unreasonable risk of causing emotional distress to A.L.

217.    Defendant Hoosac and Defendant Foster should have realized that allowing Dominguez to meet with A.L. alone, following the reports of sexual harassment, sexual assaults and inappropriate sexual contact of A.L. by Dominguez, involved an unreasonable risk of causing emotional distress to A.L.

218.    Defendant Hoosac and Defendant Foster should have realized that their interviewing of students and others to "dig up dirt" on and discredit A.L., rather than investigating and/or trying to substantiate the allegations concerning the sexual harassment and assault of A.L., involved an unreasonable risk of causing emotional distress to A.L.

219.    Defendant Hoosac and Defendant Foster should have realized that in failing to provide resources and emotional support to A.L. involved an unreasonable risk of causing emotional distress to A.L.

220.    Defendant Hoosac and Defendant Foster should have realized that by making it difficult for A.L. to return to Hoosac, including by insisting on a medical release and a release of potential claims against Hoosac and its agents/employees, involved an unreasonable risk of causing emotional distress to A.L.

221.    As a direct and proximate result of Defendant Hoosac's and Defendant Foster's negligence and carelessness, A.L. suffered medically diagnosable and medically significant emotional distress.

222.    A.L. has incurred damages as the result of Defendants' negligence.

223.    The actions and conduct set forth herein were outrageous and showed evil motive, reckless indifference, and/or conscious disregard for the rights of A.L., and therefore she is entitled to punitive damages from Defendant Hoosac and Defendant Foster to punish them and to deter them and others from engaging in like conduct in the future.

224.    At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of the Defendants and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by the Defendants, and/or their actions were ratified by the Defendants making them vicariously liable for said actions under the doctrine of respondeat superior.

WHEREFORE, Plaintiff prays for judgment against Defendant Hoosac and Defendant Foster on Count XI of her Complaint for an award of compensatory damages, including lost wages and loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation and degradation; punitive damages; pre-judgment and post judgment interest as provided by law; costs expended; and for such other relief as this Court deems just and proper, including equitable relief.

**COUNT XII**
**<u>Against Defendants Hoosac and Foster</u>**
**(Negligence)**

225.    Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

226.    Defendant Hoosac and Defendant Foster had a duty to possess and use a degree of reasonable skill and care to protect the students, student employees, and minor children at Hoosac, including A.L., from unreasonable risks of harm.

227.    Defendant Hoosac and Defendant Foster breached the duty they owed A.L, as alleged in Counts I, III, IV, and VI.

228.    Defendant Hoosac and Defendant Foster placed and/or allowed A.L. to be placed in a work environment where she was subjected to Defendant Dominguez's authority, supervision, and control.

229.    Defendant Hoosac and Defendant Foster failed to adequately ensure that employees of Sage, who were supervising and/or in contact with A.L., other student employees, and students in general, were supervised appropriately, had not been disciplined for sexual harassment or inappropriate conduct, and did not have propensities to engage in sexual harassment, sexual assault, and/or inappropriate contact with students.

230.    Defendant Hoosac and Defendant Foster were negligent in that they allowed A.L., a minor female employee, to work alone with a male supervisor.

231.    Defendant Hoosac and Defendant Foster was negligent in failing to ensure that sexual harassment training was provided to A.L. and other student employees, including a mechanism whereby A.L. and others could report any sexual harassment, sexual abuse, and/or inappropriate sexual contact.

232.    Defendant Hoosac and Defendant Foster were negligent in failing to properly investigate the reports that A.L. had been sexually harassed, sexually assaulted, and inappropriately touched by Dominguez.

233.    Defendant Hoosac and Defendant Foster were negligent in informing Dominguez of the report that had been made against him, and thereafter allowing Dominguez to meet with A.L. alone.

234.    Defendant Hoosac and Defendant Foster were negligent in instructing Dominguez to terminate A.L.'s employment following the reporting of the sexual harassment, sexual assault, and inappropriate sexual contact that A.L. was subjected to by Dominguez.

235.    Defendant Hoosac and Defendant Foster were negligent in their interviewing of students and others, in that no effort was made to investigate and/or substantiate the allegations

concerning the harassment and assault of A.L., but rather Defendants conducted the interviews in an effort to "dig up dirt" on and discredit A.L.

236. Defendant Hoosac and Defendant Foster were negligent in failing to provide resources and emotional support to A.L. who was an employee and student of Hoosac.

237. As a direct and proximate result of the negligence of Defendant Hoosac and Defendant Foster, Dominguez was permitted to cause emotional and physical injury to A.L. as outlined above.

238. As a direct and proximate cause of Defendants' negligence following the reporting of the sexual harassment, sexual assaults, and inappropriate sexual contact, Defendant Hoosac and Defendant Foster revictimized A.L causing additional emotional distress.

239. Plaintiff A.L. has suffered and will continue to suffer damages as a result of Defendants' negligence as outlined above.

240. Defendant Foster's and other employees/agents of Hoosac's conduct described herein was committed within the course and scope of their agency and employment with Defendant Hoosac and is imputed to it by respondeat superior, and Defendant Hoosac is, therefore, liable for all damages described herein.

241. The actions and conduct set forth herein were outrageous and showed evil motive, reckless indifference, and/or conscious disregard for the rights of Plaintiff A.L. and, therefore, she is entitled to punitive damages from Defendant Hoosac and Defendant Foster , to punish them and to deter them and others from engaging in like conduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendant Hoosac and Defendant Foster on Count XII of her Complaint for an award of compensatory damages, including lost wages and loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety,

humiliation and degradation; punitive damages; pre-judgment and post judgment interest as provided by law; costs expended; and for such other relief as this Court deems just and proper, including equitable relief.

## COUNT XIII
### Against Defendants Hoosac and Foster
#### (Negligence Per Se)

242.     Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

243.     Pursuant to NY Social Service Law, Chapter 55 Article 6 §413 and §420, all schools, principals, teachers, and school employees have a duty to report acts of abuse and/or reasonable suspicion of abuse of a child/minor in their care, in a specific manner and timeframe as set forth in the statute.

244.     The above referenced law is intended to protect students and minor children.

245.     Plaintiff A.L. is a member of the class of persons the statute was intended to protect.

246.     A.L.'s injury was the type that the statute was intended to protect and prevent in terms of further harm.

247.     Despite knowledge of the abuse of A.L., who was in the custody and care of Defendant Hoosac and Defendant Foster , they failed to report the abuse as required by law and, therefore, violated the above referenced law.

248.     As a direct and proximate result of Defendants' failure to report, Defendant Hoosac and Defendant Foster injured A.L. as herein described.

249.     A.L. has incurred and will incur necessary and reasonable medical expenses, and has suffered and will continue to suffer physical pain and mental anguish as direct and proximate result of Defendants' negligence.

250.     The actions and conduct set forth herein were outrageous and showed evil motive, reckless indifference, and/or conscious disregard for the rights of A.L. and, therefore, she is entitled to punitive damages from Defendant Hoosac and Defendant Foster to punish them and to deter them and others from engaging in like conduct in the future.

251.     At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendant Hoosac and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Hoosac, and/or their actions were ratified by Defendant Hoosac, thereby making Defendant Hoosac vicariously liable for said actions under the doctrine of respondeat superior.

WHEREFORE, Plaintiff prays for judgment against Defendant Hoosac and Defendant Foster on Count XIII of her Complaint for an award of compensatory damages, including lost wages and loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation and degradation; punitive damages; pre-judgment and post judgment interest as provided by law; costs expended; and for such other relief as this Court deems just and proper, including equitable relief.

**COUNT XIV**
**<u>Against Defendants Sage and Dominguez</u>**
**(Assault and Battery)**

252.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

253.     Defendant Dominguez attempted and succeeded in causing the immediate apprehension of physical contact in A.L.

254.     Defendant Dominguez attempted and succeeded in causing offensive and/or harmful physical contact with A.L.

255.    The contact was unlawful, unjustified, and done without Plaintiff's express or implied consent.

256.    The contact to which A.L. was subjected would be offensive to a reasonable person.

257.    Based on information and belief, Defendant Sage failed to adequately investigate and discipline Dominguez after receiving complaints of similar misconduct prior to the assaults on A.L.

258.    By failing to adequately investigate and discipline Defendant Dominguez, Defendant Sage ratified his past behavior.

259.    As a direct and proximate result of defendant Dominguez's conduct, he injured A.L., as outlined above, including causing emotional and physical injury to A.L.

260.    As a result of the apprehension of physical contact, and the offensive and/or harmful physical contact suffered by A.L., she has thereby suffered damages.

261.    Defendant Dominguez's conduct described herein was committed within the course and scope of his agency and employment with Defendant Sage and his conduct is thus imputed to Sage by respondeat superior, and Defendant Sage is thus liable for all damages described herein.

262.    The actions and conduct set forth herein were outrageous and showed evil motive, reckless indifference, and/or conscious disregard for the rights of A.L. and, therefore, she is entitled to punitive damages from Defendant Sage and Defendant Dominguez to punish them and to deter them and others from engaging in like conduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendant Sage and Defendant Dominguez on Count XIV of her Complaint for an award of compensatory damages, including lost wages and loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation and degradation; punitive damages; pre-judgment and post judgment interest

as provided by law; costs expended; and for such other relief as this Court deems just and proper, including equitable relief.

**COUNT XV**
**Defendants Sage and Dominguez**
**(Intentional Infliction of Emotional Distress)**

263.   Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

264.   Defendant Dominguez's conduct was so outrageous in character and so extreme in degree that it was beyond all possible bounds of decency and was atrocious and utterly intolerable in a civilized community.

265.   Defendant Dominguez's conduct was intended to cause A.L. severe emotional distress or reflected a reckless indifference to the likelihood that such conduct would cause A.L. severe emotional distress.

266.   Defendant Dominguez's conduct was the direct and proximate cause of A.L.'s emotional distress.

267.   As a result of Defendant Dominguez's conduct, A.L. sustained severe emotional distress, mental injury, and/or bodily harm that is medically diagnosable and/or medically significant.

268.   Defendant Dominguez's conduct described herein was committed within the course and scope of his agency and employment with Defendant Sage and such liability is thus imputed to them by respondeat superior making Defendant Sage liable for all damages described herein.

269.   The actions and conduct set forth herein were outrageous and showed evil motive, reckless indifference, and/or conscious disregard for the rights of A.L. and, therefore, she is

entitled to punitive damages from Defendant Sage and Defendant Dominguez to punish them and to deter them and others from engaging in like conduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendant Sage and Defendant Dominguez on Count XV of her Complaint for an award of compensatory damages, including lost wages and loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation and degradation; punitive damages; pre-judgment and post judgment interest as provided by law; costs expended; and for such other relief as this Court deems just and proper, including equitable relief.

**COUNT XVI**
**Against Defendants Sage and Dominguez**
**(False Imprisonment)**

270.    Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

271.    On multiple occasions, and while A.L. was working for Defendant Sage, Dominguez unlawfully and involuntarily detained and/or restrained A.L. against her will.

272.    Defendant Dominguez's restraint of A.L. was unlawful in that Defendant Dominguez had no just cause or excuse for such restraint.

273.    As a direct and proximate cause of Defendant Dominguez's intentional acts, Plaintiff has suffered compensable damage.

274.    Defendant Sage knew or should have known that Defendant Dominguez had previously, unlawfully restrained and detained other female employees, and/or knew or should have known of Dominguez's propensities to engage in such unlawful conduct based on previous complaints against Dominguez.

275.    Despite this knowledge, Defendant Sage permitted Defendant Dominguez to remain in a position of power, authority, and control where he was able to unlawfully restrain A.L.

276.    The authority and control vested in Defendant Dominguez was a result of Defendant Sage's retention of Dominguez, after acquiring knowledge of his propensity to inappropriately touch female employees and others, and its subsequent failure to adequately supervise Defendant Dominguez, thereby enabling Defendant Dominguez to perpetrate the unlawful detainment and restraint of A.L.

277.    Based on information and belief, Defendant Sage failed to adequately investigate and discipline Dominguez after receiving complaints of similar misconduct prior to the assaults on A.L.

278.    By failing to adequately investigate and discipline Defendant Dominguez, Defendant Sage ratified his past behavior.

279.    As a result of Defendants' conduct, A.L. sustained severe emotional distress, mental injury, and/or bodily harm that is medically diagnosable and/or medically significant.

280.    The actions and conduct set forth herein were outrageous and showed evil motive, reckless indifference, and/or conscious disregard for the rights of A.L. and, therefore, she is entitled to punitive damages from Defendant Sage and Defendant Dominguez to punish them and to deter them and others from engaging in like conduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendants on Count XVI of her Complaint for an award of compensatory damages, including lost wages and loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation and degradation; punitive damages; pre-judgment and post judgment interest as provided by law; costs expended; and for such other relief as this Court deems just and proper, including equitable relief.

**COUNT XVII**
**Defendants Hoosac and Foster**
**(Intentional Infliction of Emotional Distress)**

281.    Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

282.    Defendant Foster's conduct was so outrageous in character and so extreme in degree that it was beyond all possible bounds of decency and was atrocious and utterly intolerable in a civilized community.

283.    Defendant Foster's conduct was intended to cause A.L. severe emotional distress or reflected a reckless indifference to the likelihood that such conduct would cause A.L. severe emotional distress.

284.    Defendant Foster's conduct was the direct and proximate cause of A.L.'s emotional distress.

285.    As a result of Defendant Foster's conduct, A.L. sustained severe emotional distress, that is medically diagnosable and/or medically significant.

286.    Defendant Foster's conduct described herein was committed within the course and scope of his agency and employment with Defendant Hoosac and such liability is thus imputed to them by respondeat superior making Defendant Hoosac liable for all damages described herein.

287.    The actions and conduct set forth herein were outrageous and showed evil motive, reckless indifference, and/or conscious disregard for the rights of A.L., and therefore she is entitled to punitive damages from Defendant Hoosac and Defendant Foster, to punish them and to deter them and others from engaging in like conduct in the future.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant Hoosac and Defendant Foster on Count XVI of her Complaint for an award of compensatory damages,

including lost wages and loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation and degradation; punitive damages; pre-judgment and post judgment interest as provided by law; costs expended; and for such other relief as this Court deems just and proper, including equitable relief.

**COUNT XVIII**
**Against Defendants Hoosac and Foster**
**(Defamation/Slander)**

288.    Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

289.    Defendant Foster made disparaging statements about A.L. to faculty members, students, and others after receiving reports that A.L. had been sexually assaulted by Defendant Dominguez.

290.    The disparaging statements made by Defendant Foster about A.L. included but were not limited to saying that A.L. was a "troublemaker", "liar", "could not be trusted", and that A.L. "liked to sleep with adults".

291.    The disparaging statements made by Defendant Foster were false and were made with an intent to harm A.L.'s reputation.

292.    Defendant Foster negligently, or more likely intentionally, made the disparaging comments about A.L. to faculty, students, and others.

293.    As a result of Defendant Foster's disparaging comments about A.L., A.L.'s reputation was negatively impacted.

294.    Moreover, based on information and belief, as a result of Defendant Foster's disparaging comments about A.L., A.L. was denied recognition and awards for her academic achievements.

295.    Defendant Foster's conduct described herein was committed within the course and scope of his agency and employment with Defendant Hoosac and such liability is thus imputed to them by respondeat superior making Defendant Hoosac liable for all damages described herein.

296.    The actions and conduct set forth herein were outrageous and showed evil motive, reckless indifference, and/or conscious disregard for the rights of A.L., and therefore she is entitled to punitive damages from Defendant Hoosac and Defendant Foster, to punish them and to deter them and others from engaging in like conduct in the future.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant Hoosac and Defendant Foster on Count XVIII of her Complaint for an award of compensatory damages, including lost wages and loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation, and degradation; punitive damages; pre-judgment and post judgment interest as provided by law.

## JURY DEMAND

**TAKE NOTICE** that Plaintiff demands trial by jury on all issues herein.

Dated: September 16, 2022

Respectfully submitted,

**MOTLEY RICE LLC**

By: */s/ Daniel Lapinski*
Daniel R. Lapinski, Esquire
USDC NDNY Bar Roll #703879
Woodland Falls Corporate Park
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
Telephone: 856-382-4670
Facsimile:  856-667-5133
dlapinski@motleyrice.com

**HOLMAN SCHIAVONE, LLC**

Anne Schiavone, Esquire (to be admitted *pro hac)*
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
Telephone: 816.283.8738
Facsimile: 816.283.8739
aschiavone@hslawllc.com

**ATTORNEYS FOR PLAINTIFF**

46